Your Honors, good morning. Gary Bircham on behalf of Appellant Mike Wilson. This is a very straightforward IAC case, unlike the last one. When Mr. Wilson appeared at State Court for his readiness conference, the record shows that the prosecutor, through his attorney, made him an offer to resolve his case for a six-year prison term. Wilson says he immediately told his attorney he wanted to take that offer. In fact, he wanted to dispose of his case immediately that day. But the – but his counsel never told the prosecutor about his acceptance of the offer. The offer expired, and Mr. Wilson later ended up pleading guilty to a less favorable plea deal and received nine years and four months in prison. The issue before this Court, the one certified by this Court, is whether Mr. Wilson's attorney rendered IAC by failing to communicate his acceptance of the offer to the government. The clearly established law in this case comes from the 2012 cases of Frye and Laffler. And what those cases say is you have to prove, obviously, deficient performance, which in this case would be a plea offer having been made, and Mr. Wilson wanting to accept the offer but wasn't able to because of his attorney's unprofessional performance. And in prejudice, a reasonable probability that the government would have maintained the offer had it been accepted and that the trial court would have accepted the offer. The first reason we're asking this Court to reverse the district court's dismissal of the petition is that the State courts didn't apply the correct test in the case. What evidence is there that all this happened, that he accepted and that the attorney passed the information on to him about the six-year deal, that he accepted and wasn't passed on? Your Honor, the evidence in the record as to the deficient performance prong, the deputy DA filed a declaration where she looked at her first file and the notes in the file indicated that an offer of six years had been made. She didn't recall the case specifically, and this was a readiness conference where she was probably dealing with a dozen, two dozen cases. But the file showed that it looked like this. She did make the offer. It looks like an offer was made. And then with respect to Mr. Wilson agreeing at that time to accept it, we have Mr. Wilson saying that on a couple of occasions, including a declaration that he filed in the State court. But nothing further than that. But there's no evidence to the contrary either. There's nothing in the record to show that Mr. Wilson did not tell his lawyer that he wanted that deal. And frankly, Mr. Wilson had a pretty good criminal history. I think he realized that six years for that case was a pretty good offer. It wasn't going to get much better than that. So we have Mr. Wilson saying, I heard the offer. I said it can get worse than this. I want the offer now. Let's finish the case. That's the record concerning the offer and the acceptance. But what about the fact that he withdrew his motion to withdraw his guilty plea and to enforce the prior plea agreement? Your Honor, that obviously deprives us of a better record concerning the offer. Do you have prejudice? I don't think so, because we have to look at the situation Mr. Wilson was in at the time that he decided to do that. After his attorney failed to communicate the offer and the offer was withdrawn, shortly thereafter his attorney pled him to the sheet, seven counts, and looked at 25 to life in prison. And so when he told the trial court that he wanted the original offer back, he wanted a new attorney to file this motion, and the new attorney was given to him, he was in a really bad position at that point. It wasn't just an open case with no plea being entered. He had already pledged to a 25 to life sentence and was in a very, very bad way. And so I think what he did at that point is what we want defendants to do, which is try to mitigate the damage from the IAC. Instead of putting all of his eggs in the basket of, you know, I hope I can withdraw my plea and enforce the offer, the first thing he did, which I think was a smart thing, was try to get that 25 to life plea vacated, which he did, and get something more reasonable, and then later on address it through state habeas and federal habeas, which is what Mr. Wilson did. And so while we would have a better record and it probably would have been preferable for Mr. Wilson to have adjudicated fully the motion to withdraw the plea and the motion to enforce the six-year offer, I think given his situation at that point, it was prudent and it was reasonable for him to first get his case under control with a different offer and then address the issues with prejudice would the court have followed the offer and would the government have kept the offer open. With respect to the prejudice, I'll try to be brief and stay within the 10 minutes. The government says, well, we don't have any indication that the government would have kept this offer open. You know, I would just go back to sort of a practical approach to plea bargaining in state and federal court. You show up, the initial offer is usually the first and best offer, but it's an offer, and if you accept the offer, that's going to be what you're going to get later on down the line. If the state, if the government has discretion to add something later on or make the offer for more time later on, that may be the case, but from a practical standpoint, these cases are dealt out, especially in state court, early on at these readiness conferences or trial calls, and the offer that's made is the offer that's made. You take it, you leave it, and if you take it, that's what you get, and if you leave it, the next offer is higher, which is exactly what happened to Mr. Wilson in this case. First offer was six years. There was no acceptance because of his attorney's unprofessional performance. The next offer, nine years, four months. That's how it works. Every time it gets a little bit higher, and that's what happened to Mr. Wilson in this case. And so I think just given the practicalities of plea bargaining and the way these cases work, I think there was a very reasonable, very strong probability that the government would have stuck with this offer and Mr. Wilson would have had a recommendation for six years. As to whether the trial court would have accepted this offer, again, the Frye case talks about how we're not a system of trials, we're a system of pleas now primarily, and everyone understands the boundaries of plea bargaining. The prosecutor understands what's a reasonable offer, what the judge is going to or not going to likely accept, and the judge is part of that process as well. And so when the prosecutor made the offer for six years to Mr. Wilson, which is a lot of time in prison for basically a joyriding and evading case, certainly the prosecutor believed that this was an offer that the judge would accept. I don't think the prosecutor would make an out-of-bounds left-field offer knowing that the trial judge would say, what are you doing, that's a horrible offer. I think the fact that the prosecutor made the offer is strong evidence that the court would have been okay with it. And also we have the fact that the nine-year, four-month offer that Mr. Wilson ultimately pledged to, in structure, was the same offer. Count one and count four. The same prosecutor. I believe so. Count one, high term instead of midterm. Count four, consecutive time. But admit a strike, admit a prison prior. So it was essentially the same offer as the six-year offer. It was just more time because the first offer had never been accepted. And so the Friar talks about how in most instances we can look at the record objectively and figure out if the offer was something that would have been kept open and the court most likely would have followed. Looking at another aspect of this, didn't Wilson make a contrary statement that in his traverse that his counsel's ineffective assistance caused him to reject an otherwise advantageous six-year plea? And then he says here that he told his counsel to accept the plea. So in one scenario he was rejecting the plea and the other one he was accepting the plea? Yes, ma'am, you're right. He did sort of make an alternative argument. It is somewhat contrary. But at the time he filed that motion to enforce the plea in the trial court. That's when he said, you know, I told my lawyer I wanted the offer and it just never got communicated. So there was sort of a switching oars midstream later on in federal habeas. But I think at the time this issue was right, when the motion was filed, he made the claim that he was presented the offer, he accepted the offer, and it was just never communicated. If I can reserve a minute or two for rebuttal? Yeah, yeah, go ahead. Thank you very much. Thank you. Good morning, Your Honor. May it please the Court? Kevin Viena, Deputy Attorney General for the Respondent in this matter. You asked if it was the same lawyer with the initial offer and the later one. The answer to that one is no, it was not. The first lawyer was Bonnie Howard-Reagan, who I think is a supervisor in the San Diego District Attorney's Office. Later on, when the final guilty plea was entered, I don't recall the name. It was Meyer or Lay, something like that. But the clerk's transcripts, portions that are in the excerpts of record, had the name of the prosecutor who was there, and it's not Bonnie Howard-Reagan. But, of course, that probably was one of the critical issues, or what I think is one of the critical issues here, and that is why did things change and why can we not have confidence that he would have ultimately pled guilty and gotten the six-year deal? And the answer to that is quite apparent. What happened between the very early, and I agree, it does look like the six-year offer was made at one point. What happened between that and the next time, and the next time after that when they were in trial, is that the prosecutor's office discovered the existence of either two or three additional strike convictions from the state of Tennessee, and that significantly changed the posture of the case. That is, instead of looking at a term of years, what the district attorney could see was a criminal, Mr. Wilson, whose prior criminal history made him eligible for a life term. And that obviously would change the approach to the case. The record here is quite poorly developed. We can't tell exactly when the offer was made, although I think it's reasonable to think that it occurred at a readiness hearing in advance of the preliminary examination. But that's not clear from the record anywhere. It's not clear when the prosecutor learned of the change of circumstances. It's not clear at all whether the prosecutor indicated that the offer would remain open or had to be accepted at that very moment when it apparently was not. There is no declaration from defense counsel, and perhaps I think most significantly the point that Judge Wardlaw brought up, and that is that even now we cannot trust the affirmance made by Mr. Wilson because in the district court he not only changed canoes in midstream, he changed streams from I will accept this offer to no, I repeatedly rejected this offer, but on the advice of counsel. My final point is this, I think. The district court said that the IAC claim with regard to defense counsel number one, Mr. Kirshner, was not barred by the doctrine of TALIP. I think that's incorrect. That is, I agree in general that all pre-trial ineffective, or pre-plea ineffective assistance of counsel claims are not barred by TALIP. That is, if counsel's performance leads ultimately to an unknowing guilty plea, then TALIP doesn't bar. Because what can be challenged outside of TALIP is an involuntary or unknowing guilty plea. But in this circumstance we have something that's quite different. We have a new defense counsel was assigned. This new defense counsel had a period of months to investigate whether he thought he had a valid, that is, on further development of the record, he had a valid claim of ineffective assistance of counsel. That is, he had months to determine whether he could show either that counsel was ineffective, that is, that Mr. Wilson's statements are correct at one time that he would have taken the deal, or that the deal would have remained open or that he would ultimately have been sentenced. Defense counsel had months to determine that, and instead at the end decided to enter a plea of guilty. And Mr. Wilson has never suggested that the second defense counsel, Daniel Mitts, was in any way ineffective in negotiating that later plea agreement that led to a nine-year and four-month deal. So I would say that I think the district court is wrong that TALIP doesn't apply. I think it should apply in this circumstance. But even if TALIP doesn't apply, and the district court was right there, what the district court was absolutely right about was that what we had from Mr. Wilson was an abandonment in the state court at the trial level of his earlier IAC claim. And consequently, no development of the record that demonstrates or that allowed him to meet his burden of showing deficient counsel performance and prejudice. If the Court has no questions, I think I've covered the points that I hope to make in this argument. Thank you. You're welcome, Your Honor. Just a couple additional points. There were some additional priors discovered after the offer was made. But, again, practically speaking, at that readiness hearing, if that's what it was, if Mr. Wilson, if counsel for Mr. Wilson tells the deputy DA, Wilson wants the six years, that file's closed. Either the plea is entered that day and the sentencing happens later on,  and this idea that the DA's office is going to continue to gather all this evidence and subsequently change the offer later on, I think is just not how the system would work in a case like this. With respect to abandonment of this issue with his nine-year, four-month plea, Mr. Wilson did exactly what the state law tells him to do, which is to raise IAC, trial IAC claims on habeas. That's what state law provides. That's exactly what he did. And, again, I just don't think we should punish Mr. Wilson for mitigating really, really damaging IAC that wasn't his fault and then later presenting the issues properly on state habeas and now before this Court. How many years has he been serving? He's actually served over six years. He's supposed to get out next summer, I believe, with the parole. If he were to get the six years, he'd, I guess, be released with no paper. So is he getting credits for a good time, sir? Oh, yes. Does that apply to the early release? Exactly, yes. Okay. Thank you. Thank you very much. Well, have you spoke with the Attorney General's office about working something out? I have not, Your Honor. Well, you're here. We can confer, Your Honor. What? Well, we have to confer in the quarter, but I think it's unlikely that we'll agree to work something out. What did you say? I'm sorry. I don't take your part. I'm speaking to the mic. Yes. Your Honor, I don't have the authority to work something out, and, in general, our office declines to negotiate the resolution of appeals at this stage. You don't always try. I can ask my superiors. That's correct, Your Honor. Yeah. Okay. It wouldn't be a bad idea. Very well, Your Honor. He's close to getting out anyway. Yes. I think he is required to serve 80 percent of his nine-year sentence. That works out to about seven years, so he should be getting close. All right. Thank you. Thank you. Okay. Thank you. All right. We now come to the Maurice Oliver v. Scrivener.
judges: Pregerson, Noonan, Wardlaw